UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| BRIAN MALION | ) | Case No.   21-13351-AIH |
| | ) | |
| Debtor(s) | ) | Chapter   7 |
| | ) | |
| | ) | Judge:   ARTHUR I. HARRIS |
| | ) | |
| | ) | MOTION OF TOWNE MORTGAGE |
| | ) | COMPANY FOR RELIEF FROM STAY |
| | ) | AND ABANDONMENT |
| | ) | 17408 Woodbury Ave, Cleveland, OH |
| | ) | 44135 |
| | ) | |
| | ) | |
| | ) | |

Towne Mortgage Company (the "Movant") moves this Court, under Bankruptcy Code

§§ 361, 362, 363, and other sections of Title 11 of the United States Code, under Federal Rules

1

of Bankruptcy Procedure 4001 and 6007 , and under Local Bankruptcy Rule 4001-1 for an order

conditioning, modifying or dissolving the automatic stay imposed by Bankruptcy Code § 362.

AND FOR ABANDONMENT OF PROPERTY UNDER BANKRUPTCY CODE § 554.

<u>MEMORANDUM IN SUPPORT</u>

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

This is a core proceeding under 28 U.S.C. § 157(b)(2).   The venue of this case and this motion is

proper under 28 U.S.C. §§ 1408 and 1409.

2.      On January 9, 2013, the Brian Malion obtained a loan from Polaris Home

Funding Corp in the amount of $102,978.00. Such loan was evidenced by a Note dated January

9, 2013 (the "Note"), a copy of which is attached as Exhibit A.

3.      To secure payment of the Note and performance of the other terms contained in it,

the BRIAN MALION executed a Security Agreement in favor of Polaris Home Funding Corp

dated January 9, 2013 (the "Security Agreement").   The Security Agreement granted a lien on

the 17408 Woodbury Ave, Cleveland, OH 44135 owned by BRIAN MALION (the "Collateral").

The Collateral is more fully described in the Security Agreement (check one):

        ☒    attached as Exhibit B;

          OR

        ☐    contained in the Note, attached as Exhibit A.

4.      The lien created by the Security Agreement was duly perfected by (check all that

apply):

        ☒    Filing of the Security Agreement in the office of the Cuyahoga County
            Recorder on January 23, 2013.

2

☐ Filing of the UCC-1 Financing Statement in the office of _____ on _____.

☐ Notation of the lien on the Certificate of Title.

☐ Other (state with particularity) ***how_sec_perfected***.

A copy of the recorded Security Agreement, UCC-1 Financing Statement, Certificate of Title or other document, as applicable, is attached as Exhibit B. Based on Security Agreement, the lien is the first lien on the Collateral.

5. The entity in possession of the original Note as of the date of this motion, is Towne Mortgage Company.

6. The entity servicing the loan is: Towne Mortgage Company.

7. The Note was transferred, as evidenced by the following:

a. If the Collateral is real estate:

i. Under Uniform Commercial Code § 3-203(a) as applicable under state law in effect where the property is located, from the original lender:

☐ N/A.

OR

☒ By endorsement on the Note, payable to Towne Mortgage Company.

OR

☐ By blank endorsement on the Note.

OR

☐ By allonge attached to the Note, payable to _____.

3

OR

☐ By blank allonge, attached to the Note.

OR

☐ The Note is not endorsed to the Movant, or is not endorsed in blank with an allegation that the Movant is in possession of the original Note. The factual and legal basis upon which the Movant is entitled to bring this motion is (explain with particularity and attach supporting documentation):

_____

_____

_____.

OR

☐ By endorsement on the Note or by allonge attached to the Note, through a power of attorney. If this box is checked, a copy of the power of attorney is attached as Exhibit C. Explain why it provides Movant the authority to endorse the Note:

_____

_____

_____.

ii. Under Uniform Commercial Code § 3-203(a) as applicable under state law in effect where the property is located, from the <FIRST TRANSFEREE> to < _____> [ADD ADDITIONAL TRANSFER SECTIONS AS APPROPRIATE. THE LAST TRANSFEREE MUST BE THE MOVANT].>

iii. Other_____ [explain].

b. If the Collateral is not real estate (check one):

☒ N/A.

OR

4

&#9633; From the original lender to &lt;FIRST TRANSFEREE&gt; by &lt;STATE METHOD OR DOCUMENT EFFECTING TRANSFER&gt; [ADD ADDITIONAL TRANSFER SECTIONS AS APPROPRIATE. THE LAST TRANSFEREE MUST BE THE MOVANT.]

8. The Security Agreement was transferred as follows (check one):

&#9633; N/A.

OR

&#9746; From the original lender, mortgagee, or mortgagee's nominee on July 25, 2015 to Towne Mortgage Company.   The transfer is evidenced by the document(s) attached to this Motion as Exhibit C.

9. The value of the Collateral is $120,000.00.   This valuation is based on the Debtor's Schedule A.

10. As of the date of this Motion, there is currently due and owing on the Note the outstanding principal balance of $92,751.33, plus interest accruing thereon at the rate of 3% per annum [$8.26 PER DAY] from November 1, 2021, as described in more detail on the worksheet. The total provided in this paragraph cannot be relied upon as a payoff quotation.

11. The amount due and owing on the Note as set forth in paragraph 10 Does Not include a credit for the sum held in a suspense account by the Movant.   The amount of the credit is N/A.

12. Other parties known to have an interest in the Collateral besides the debtor(s), the Movant, and the trustee are (check all that apply):

&#9746; N/A.

&#9633; The Cuyahoga County Treasurer, for real estate taxes, in the amount of $&lt;AMOUNT&gt;.

5

    ☐    &lt;CO-OWNERS, IF APPLICABLE, STATE NAME&gt;.

    ☐    &lt;ANY OTHER PARTY HOLDING A LIEN, IF APPLICABLE, IN THE AMOUNT OF $_____ [ADD ADDITIONAL PARTIES AS APPROPRIATE]&gt;.

13.     The Movant is entitled to relief from the automatic stay under Bankruptcy Code

§ 362(d) for these reason(s) (check all that apply):

    ☐    Debtor has failed to provide adequate protection for the lien held by the Movant for these reasons:___&lt;EXPLAIN&gt;_____.

    ☐    Debtor has failed to keep the Collateral insured as required by the Security Agreement.

    ☐    Debtor has failed to keep current the real estate taxes owed on the Collateral.

    ☒    Debtor has failed to make periodic payments to Movant for the months of November, 2017 through October, 2021 which unpaid payments are in the aggregate amount of $40,857.24 through October 22, 2021.   The total provided in this paragraph cannot be relied upon as a reinstatement quotation.

    ☒    Debtor has no equity in the Collateral, because the Collateral is valued at $120,000.00, and including the Movant's lien, there are liens in an aggregate amount of $126,979.87 on the Collateral.

    ☐    Debtor's plan provides for surrender of the Collateral.

    ☐    The property is not necessary to an effective reorganization because_____ _____.

    ☐    Other cause (set forth with specificity):_____

14.     Movant has completed the worksheet, attached as Exhibit E.

15.     Movant is entitled to an order directing the trustee to abandon the Collateral under

11 U.S.C. §554(b) for these reasons (check all that apply):

    ☐    The Collateral is burdensome to the estate because

6

_____.

☒   The Collateral is of inconsequential value and benefit to the estate because upon liquidation of the Collateral no proceeds will remain for the benefit of the estate.

WHEREFORE, Movant prays for an order from the Court:

(a)   granting Movant relief from the automatic stay of Bankruptcy Code § 362 to permit Movant to proceed under applicable nonbankruptcy law; <AND>

(b)   AUTHORIZING AND DIRECTING THE CHAPTER 7 TRUSTEE TO ABANDON THE COLLATERAL UNDER BANKRUPTCY CODE § 554.

Respectfully submitted,

_/s/ Patrick Hruby_
Patrick Hruby
(Bar No. 0085107)
Attorney for Creditor
BROCK & SCOTT, PLLC
2001 Northwest 64th Street, Suite 130
Fort Lauderdale, FL 33309
Telephone:   813-342-2200
Facsimile:   954-618-6954
E-Mail:   Floridabklegal@Brockandscott.com

7

## CERTIFICATE OF SERVICE

I certify that on November 4, 2021, a true and correct copy of the Motion for Relief from Automatic Stay was served: Via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

William C Behrens, Esq., Attorney for the Debtor, at billbehrens@prodigy.net

Sheldon Stein, Chapter 7 Trustee ssteindocs@gmail.com

And by regular U.S. Mail, postage prepaid, to:

BRIAN MALION
17408 WOODBURY AVE
CLEVELAND, OH 44135-4360

/s/ Patrick Hruby
Patrick Hruby
(Bar No. 0085107)
Attorney for Creditor
BROCK & SCOTT, PLLC
2001 Northwest 64th Street, Suite 130
Fort Lauderdale, FL 33309
Telephone:  813-342-2200
Facsimile:  954-618-6954
E-Mail:  Floridabklegal@Brockandscott.com

8

In re:                )

                    )     Case No.  21-13351-AIH

BRIAN MALION        )

                    )     Chapter  7

          Debtor(s)     )

                    )     Judge:  ARTHUR I. HARRIS

                    )

                    )     TOWNE MORTGAGE

                    )     COMPANY'S RELIEF FROM

                    )     STAY AND ABANDONMENT

                    )     WORKSHEET

                    )

                    )

I.      **LOAN DATA**

      A.     IDENTIFICATION OF COLLATERAL (check all that apply):

             ☒     Real Estate <u>17408 Woodbury Ave, Cleveland, OH 44135</u>

                    ☒     Principal Residence of Debtor(s)

                    ☐     Other

             ☐     Personal Property

             ☐     Other Property

      B.     CURRENT VALUE OF COLLATERAL: $<u>120,000.00</u>

      C.     SOURCE OF COLLATERAL VALUATION: <u>Debtor's Schedule D</u>

      D.     ORIGINAL LENDER: <u>Polaris Home Funding Corp</u>

      E.     ENTITY ENTITLED TO ENFORCE THE NOTE: <u>Towne Mortgage Company</u>

      F.     CURRENT LOAN SERVICER: <u>Towne Mortgage Company</u>

      G.     DATE OF LOAN: <u>January 9, 2013</u>

1

H.   ORIGINAL PRINCIPAL AMOUNT DUE UNDER NOTE: $<u>102,978.00</u>

I.   ORIGINAL INTEREST RATE ON NOTE: <u>3.2500%</u>

J.   CURRENT INTEREST RATE: <u>3.2500%</u>

K.   ORIGINAL MONTHLY PAYMENT AMOUNT
(principal and interest only for mortgage loans): $<u>448.27</u>

L.   CURRENT MONTHLY PAYMENT AMOUNT: $<u>807.81</u>

M.   THE CURRENT MONTHLY PAYMENT AMOUNT LISTED ABOVE:

☐   Includes an escrow amount of $_____ for real estate taxes.
☐   Includes an escrow amount of $_____ for property insurance.
☒   Includes an escrow amount of $<u>359.64</u> for <u>Escrow</u>.
☐   Does not include any escrow amount.

N.   DATE LAST PAYMENT RECEIVED: <u>October 10, 2017</u>

O.   AMOUNT OF LAST PAYMENT RECEIVED: $<u>754.49</u>

P.   AMOUNT HELD IN SUSPENSE ACCOUNT: $<u>0.00</u>

Q.   NUMBER OF PAYMENTS PAST DUE: <u>48</u>

II.   AMOUNT ALLEGED TO BE DUE AS OF THE DATE THE MOTION IS FILED

|   | Description of Charge | Total Amount of Charges | Number of Charges Incurred | Dates Charges Incurred |
|---|---|---|---|---|
| A. | PRINCIPAL | $92,751.33 | | |
| B. | INTEREST | $12,308.80 | | |
| C. | ESCROW | $15,374.57 | | |
| E. | LATE FEES | $0.00 | | |
| F. | NON-SUFFICIENT FUNDS FEES | $0.00 | | |

2

| | | | | |
|---|---|---|---|---|
| G. | PAY-BY-PHONE FEES | $0.00 | | |
| H. | BROKER PRICE OPINIONS | $0.00 | | |
| I. | FORCE-PLACED INSURANCE | $0.00 | | |
| J. | PROPERTY INSPECTIONS | $0.00 | | |
| K. | OTHER CHARGES (describe in detail and state contractual basis for recovering the amount from the debtor) | $6,545.17 Unpaid Fees Due | | |

TOTAL DEBT:                                  $126,797.87

LESS AMOUNT HELD IN SUSPENSE:      $0.00

TOTAL DUE AS OF DATE MOTION IS FILED:  $126,797.87 *
* This total cannot be relied upon as a payoff quotation.

This Worksheet was prepared by:

*/s/ Patrick Hruby*
Patrick Hruby
Bar No. 0085107)
Attorney for Creditor
BROCK & SCOTT, PLLC
2001 Northwest 64th Street, Suite 130
Fort Lauderdale, FL 33309
Telephone:  813-342-2200
Facsimile:  954-618-6954
E-Mail:  Floridabklegal@Brockandscott.com

3

# EXHIBIT A

Multistate
LOAN# ████████

**NOTE**

FHA Case Number
████████

---

January 8th, 2013
[Date]

17408 WOODBURY AVE CLEVELAND, OH 44135

[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means POLARIS HOME FUNDING CORP, A FLORIDA CORPORATION

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED TWO THOUSAND NINE HUNDRED SEVENTY EIGHT AND NO/100
Dollars (U.S. $ 102,978.00          ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of   THREE AND ONE QUARTER
per cent
(        3.250        %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on March 1st                              , 2013   .  Any principal and interest remaining on the first day of February          , 2043   , will be due on that date, which is called the "Maturity Date."

(B) Place
Payment shall be made at   O-161 44TH ST SW, GRANDVILLE, MI 49418

or at such other place as Lender may designate in writing by notice to Borrower.

(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $ 448.17          . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge      ☐ Growing Equity Allonge      ☐ Other [specify]

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayments on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of   FOUR AND 000/1000          per cent (      4.0      %) of the overdue amount of each payment.

(B) Default
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

| | |
|---|---|
| PAY TO THE ORDER OF | _____ (Seal) |
| Towne Mortgage Company | BRIAN MALION                Borrower |
| WITHOUT RECOURSE | _____ (Seal) |
| POLARIS HOME FUNDING CORP. | Borrower |
| | _____ (Seal) |
| | Borrower |
| | _____ (Seal) |
| | Borrower |

DUANE D. VANDER ARK
CEO

*[Sign Original Only]*

PAY TO THE ORDER OF

WITHOUT RECOURSE

TOWNE MORTGAGE COMPANY

NAME: JOANN DORAN
TITLE: POST CLOSER

FHA Multistate Fixed Rate Note - 10/95

GCC-3213-2 (6/004)                    Page 2 of 3



# EXHIBIT B

CUYAHOGA COUNTY
OFFICE OF FISCAL OFFICER - 9
MORT 1/23/2013 11:33:15 AM.

201301230521

-------- [Space Above This Line For Recording Data] --------

## OPEN-END MORTGAGE

MIN:

FHA Case Number

LOAN#

PARCEL TAX ID# 027-05-016

THIS MORTGAGE ("Security Instrument") is given on **January 9th, 2013**
The Mortgagor is **BRIAN MALION , UNMARRIED MAN**

whose address is   17408 WOODBURY AVE , Cleveland, OH 44135

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS").
MERS is a separate corporation acting solely as a nominee for Lender and Lender's successors and assigns.
MERS is the Mortgagee under this Security Instrument. MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. BOX 2026, Flint, MI 48501-2026, tel. (888)
679-MERS.
**POLARIS HOME FUNDING CORP, A FLORIDA CORPORATION**
which is organized and existing under the laws of  **THE STATE OF FLORIDA**                  , and whose
address is   O-151 44TH ST SW, GRANDVILLE, MI 49418

("Lender"). Borrower owes Lender the principal sum of
**ONE HUNDRED TWO THOUSAND NINE HUNDRED SEVENTY EIGHT AND NO/100**
Dollars (U.S. $ **102,978.00** ).

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on
**February 1st, 2043** . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and
the the successors and assigns of MERS the following described property located in
**CUYAHOGA**                                      County, Ohio:

*OHIO - Single Family - FHA SECURITY INSTRUMENT - 1/96- MERS*
*GCC - M1590-1OH (11/10)*                Page 1 of 8

```
SEE ATTACHED LEGAL DESCRIPTION




```

which has the address of    17403 WOODBURY AVE , CLEVELAND

Ohio        44135                                              [Street, City],

["Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including.

    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1.    Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

    2.    Monthly Payments of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum of (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds".

    Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

*GCC – m1680-2OH (08/03)*                    *Page 2 of 8*

21-13351-aih    Doc 11    FILED 11/04/21    ENTERED 11/04/21 18:31:42    Page 15 of 26

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b) and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b) and (c).

3.     Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4.     Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.     Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect

the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.   **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.   **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to the Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.   **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.   **Grounds for Acceleration of Debt.**

(a) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

21-13351-aih    Doc 11    FILED 11/04/21    ENTERED 11/04/21 18:31:42    Page 17 of 26

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **60 DAYS** from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 DAYS** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

GCC - 1580-5OH                         *Page 5 of 8*

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note   conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

GCC - 1890-8OH (08/09)                Page 6 of 8

18.  **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19.  **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge ███ Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

20.  **Advances to Protect Security.** This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

21.  **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | |
|---|---|
| ☐ Condominium Rider | ☐ Growing Equity Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider |
| ☐ Other(s) [specify] | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Executed before me on ___9th___ day of ___January___ . ___2013___ by

_____ (Seal)
BRIAN MALION                     -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 Borrower

_____ (Seal)
                                 -Borrower

*GCC - 1590-7OH (07/10)*          *Page 7 of 8*

# INDIVIDUAL ACKNOWLEDGMENT

STATE OF OHIO          )
                       ) SS
COUNTY OF Cuyahoga     )

On this, the  9th  day of  January  ,  2013  , before me, the subscriber, the undersigned officer, personally appeared  BRIAN MALION , UNMARRIED MAN

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge that he/she/they executed the same for the purposes herein contained

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My commission expires  4-23-16



CYNTHIA ANN CARTER
NOTARY PUBLIC, STATE OF OHIO
CUYAHOGA COUNTY
My Commission Expires Apri 23 2016

Record and Return To:
POLARIS HOME FUNDING CORP
MC 5690
O-151 44TH ST SW
GRANDVILLE, MI 49418

This Mortgage prepared by:
Barb Duling
POLARIS HOME FUNDING CORP.
612 E. NATIONAL ROAD
VANDALIA, OH 45377

*GCC - 1590-8OH (08/09)*          *Page 8 of 8*

Legal Description
For File: ████

Situated in the City of Cleveland, County of Cuyahoga and State of Ohio:

And known as being Sublot No. 3 in The Free Luce Land and Building Company's Rockport Homes Subdivision of part of Original Rockport Township Section Nos. 8 and 9, as shown by the recorded plat in Volume 65 of Maps, Page 30 of Cuyahoga County Records, and being 50 feet front on the Northerly side of Woodbury Avenue S.W. (formerly Crestview Avenue), 127.63 feet deep on the Easterly line, 127.65 feet deep on the Westerly line and 50 feet wide in the rear.

Parcel No ████████
Commonly known as: 17408 Woodbury Avenue, Cleveland, Ohio 44135

Partners Land Title Agency
Suite 110
3033 Kettering Blvd.
Dayton, OH 45439

**EXHIBIT C**

MERS Phone No.: 1-888-679-6377

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that the undersigned, **Mortgage Electronic Registration Systems, Inc. as nominee for Polaris Home Funding Corp., its successors and assigns**, whose address is P.O. Box 2026, Flint, MI, 48501-2026, (888-679-6377), does hereby assign to **Towne Mortgage Company**, whose address is 340 East Big Beaver Road, Suite 220, Troy, MI 48083-1221, all of its interest in that certain mortgage from Brian Malion, unmarried man to Mortgage Electronic Registration Systems, Inc. as nominee for Polaris Home Funding Corp., its successors and assigns, dated January 9, 2013, recorded January 23, 2013, in Instrument Number 201301230521, in the office of the Cuyahoga County Recorder, and secured by the following real estate:

Situated in the City of Cleveland, County of Cuyahoga and State of Ohio:

*LEGAL DESCRIPTION ATTACHED AS "EXHIBIT A"*

**PROPERTY ADDRESS: 17406 Woodbury Avenue, Cleveland, Ohio 44135**

IN WITNESS WHEREOF, Mortgage Electronic Registration Systems, Inc. as nominee for Polaris Home Funding Corp., its successors and assigns has set its hand on the date set forth below.

Dated:  July 21, 2015

Mortgage Electronic Registration Systems, Inc. as nominee for Polaris Home Funding Corp., its successors and assigns

By:  Stephanie O'Harris
Its:  Assistant Secretary

STATE OF MICHIGAN   }
                   }   SS.
COUNTY OF OAKLAND  }

On July 21, 2015 before me S.M. Cuylle, Notary Public, State of Michigan, personally appeared Stephanie O'Harris, Assistant Secretary for Mortgage Electronic Registration Systems, Inc. as nominee for Polaris Home Funding Corp., its successors and assigns, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
S.M. Cuylle, Notary Public
County of Macomb, State of Michigan
My Commission Expires: April 30, 2018
Acting in Oakland County, Michigan

**S.M. CUYLLE, Notary Public**
**Macomb County, Michigan**
**My Comm Exp: Apr. 30, 2018**
**Acting in Oakland County**

This instrument was prepared by:

LERNER, SAMPSON & ROTHFUSS
A Legal Professional Association
P.O. Box 5480
Cincinnati, OH 45201-5480

**EXHIBIT A**

LEGAL DESCRIPTION

And known as being Sublot No.3 in The Free Luce Land and Building Company's Rockport Homes Subdivision of part of Original Rockport Township Section Nos. 8 and 9, as shown by the recorded plat in Volume 65 of Maps, Page 30 of Cuyahoga County Records, and being 50 feet front on the Northerly side of Woodbury Avenue S.W. (formerly Crestview Avenue), 127.63 feet deep on the Easterly line, 127.65 feet deep on the Westerly line and 50 feet wide in the rear.